UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW RICHARDSON,

        Petitioner,

v.                                  CASE NO. 05-CV-71118-DT
                                    HONORABLE DENISE PAGE HOOD

PAUL RENICO,

        Respondent.
_____/

## **OPINION AND ORDER DENYING HABEAS CORPUS PETITION**

Petitioner Matthew Richardson has filed a *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254. Having reviewed the pleadings and state court record, the Court concludes that Petitioner's claims lack merit or are procedurally defaulted.

### **I. Background**

Petitioner was charged in Wayne County, Michigan with two counts of first-degree (premeditated) murder, MICH. COMP. LAWS § 750.316, and two counts of possessing a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. The charges arose from the fatal shooting of Darnell Lewis and Marguerite Tate on December 1, 2000, at 21617 Barbara Street in Detroit. Petitioner allegedly admitted in a statement to the police that he shot Lewis and Tate. He filed a pretrial motion to suppress the statement, but claimed at an evidentiary hearing that he did not make the statement. The trial court denied his motion after concluding that voluntariness was not an issue and that the question whether he made the statement was a matter of credibility for the fact finder. The statement was read into the record at trial. (Tr. July 18, 2001, at 178-85.)

On June 23, 2001, the circuit court jury convicted Petitioner as charged. The trial court sentenced Petitioner to two years in prison for the felony firearm convictions and to a consecutive term of life imprisonment for the two murders.

In an appeal of right, Petitioner argued through counsel:

Mr. Richardson's conviction must be reversed where it was based on a confession obtained in violation of his Fifth Amendment right to counsel; and trial counsel was ineffective for failing to seek suppression of the statement on this basis.

He raised the following additional claims in a *pro se* supplemental brief:

I. The trial court's refusal to grant Defendant's motion for a directed verdict of acquittal deprived Defendant of his right to due process of law where the prosecution failed to present sufficient evidence that would convince a "rational trier of fact of proof beyond a reasonable doubt" of each essential element of the charged offense.

II. Defendant was denied due process of law and a fair trial when highly prejudicial photographic evidence was published to the jury.

III. Mr. Richardson was denied his constitutional right to due process of law and a fair trial as guaranteed under the United States and Michigan Constitutions when the prosecutor elicited testimony from a witness which brought out the fact that Defendant was on probation.

IV. Defendant-appellant was denied his Fifth and Fourteenth Amendment rights to due process and a fair trial when the trial court admitted evidence of Defendant's "prior bad acts."

V. Defendant-appellant was denied the effective assistance of counsel when trial counsel failed to object to inadmissible evidence.

VI. Defendant-appellant was denied a fair trial by the cumulative effect of the prejudicial errors at his trial.

The Michigan Court of Appeals addressed all of Petitioner's claims in an unpublished opinion and affirmed his convictions. *See People v. Richardson*, No. 237800 (Mich. Ct. App. Aug. 7,

2003).

Petitioner's appellate attorney only raised the claim relating to Petitioner's confession and the related ineffectiveness claim in an application for leave to appeal in the Michigan Supreme Court. On March 30, 2004, the supreme court denied leave to appeal because it was not persuaded that the issue should be reviewed. *See People v. Richardson*, 469 Mich. 1024; 679 N.W.2d 63 (2004) (Table).

Petitioner filed his habeas petition on March 22, 2005. The grounds for relief are the seven claims that he raised in the Michigan Court of Appeals.

## II. Standard of Review

Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case." *Id*. at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. "Ultimately, AEDPA's highly deferential standard requires that this court give the state-court decision 'the benefit of the doubt.'" *Slagle v. Bagley*, 457 F.3d 501, 514 (6th Cir. 2006) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

### III. Discussion

### A. Petitioner's Confession

Petitioner alleges that the police violated his right to counsel by ignoring his request for an attorney during their interrogation of him and by continuing to question him until he made a statement. He further alleges that his trial attorney was ineffective for not seeking to suppress his statement on that basis. Respondent argues that the first part of Petitioner's claim (denial of the right to counsel) is procedurally defaulted because Petitioner failed to make the same argument in the trial court and because the Michigan Court of Appeals relied on that omission to deny relief.

Defense counsel moved to suppress Petitioner's statement to the police, but the basis for his motion is unclear from the record before the Court. The written motion is not included in the

4

state court record, and the attorneys did not make any oral arguments at the evidentiary hearing. The Court therefore will review the merits of Petitioner's challenge to his confession rather than assume from an incomplete record that Petitioner's attorney did not make the same argument in the trial court.[1]

Petitioner alleges that the confession which was admitted at trial was obtained in violation of his Fifth Amendment right to counsel. The Fifth Amendment provides that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself . . . ." U. S. CONST. amend. V. To protect a suspect's Fifth Amendment right to remain silent, an individual who

> is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning . . . must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Id*. at 473-74.

"[T]he right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege . . . ." *Id*. at 469. "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any

---

[1] "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).

subsequent questioning." *Id*. at 473-74. Stated differently, "an accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

### 1. The Facts

#### a. Testimony at the Evidentiary Hearing

Sergeant Joann Kinney testified at the state evidentiary hearing that she spoke with Petitioner on December 2, 2000, at 1:27 p.m. She stated that she advised Petitioner of his constitutional rights before speaking with him and that Petitioner repeated the rights to her. Petitioner claimed to understand his rights. He placed his initials next to each right, and he signed the constitutional rights form. According to Sergeant Kinney, Petitioner did not request an attorney and he did not exercise his right to remain silent. She did not make a written record of their conversation because she did not believe Petitioner was telling the truth about the homicide. (Tr. Mar. 16, 2001, at 4-14.)

At the conclusion of Sergeant Kinney's testimony, the prosecutor moved to admit Petitioner's signed constitutional rights form in evidence. As he did so, the trial court stated, "[I]t may be received. The testimony indicates that he was advised of his rights and that he understood his rights. And whatever he said after that[,] he did it voluntarily." (*Id*. at 15.)

Sergeant Walter Bates then testified that he spoke with Petitioner after Petitioner's conversation with Sergeant Kinney. Sergeant Bates also advised Petitioner of his constitutional rights. He observed Petitioner initial each right, indicating that he had read and understood his

rights. Among the rights he initialed was one, which read: "I can decide at anytime to exercise my rights, and not answer any questions or make any statements." Petitioner signed and dated the document. At no point did he request a lawyer or say that he did not want to speak with Sergeant Bates. Nor did Petitioner provide Sergeant Bates with his own handwritten statement. Instead, the interrogation consisted of a question and answer format, which Sergeant Bates reduced to writing. (*Id*. at 16-24.)

Petitioner testified at the evidentiary hearing that he asked both Sergeant Kinney and Sergeant Bates for an attorney. He claimed that, despite the fact that he had said he wanted a lawyer and did not want to talk to Sergeant Bates, Bates questioned him about the shootings without advising him of his constitutional rights. Petitioner further testified that he wrote out a two-page statement in his own handwriting, because he thought there was no harm in explaining his whereabouts on the day in question. He claimed that Sergeant Bates took his statement out of the room and returned with a statement in Bates' handwriting. Petitioner stated that he did not review the statement, nor sign it. (*Id*. at 26-39.)

The proceeding concluded after Petitioner disavowed the statement in question. The court stated that the voluntariness of Petitioner's statement was not an issue because Petitioner had claimed the statement was not his statement. According to the trial court, the only question was whether Petitioner made the statement and that issue was a matter of credibility for the fact finder. (*Id*. at 40-44.)

### b. Testimony at Trial

At trial, Sergeant Bates reiterated that he advised Petitioner of his constitutional rights before interviewing him and that Petitioner did not make any requests. He denied giving

7

Petitioner an opportunity to write out a statement, and he said that he did not disregard any handwritten statement drafted by Petitioner. (Tr. July 18, 2001, at 162-70, 177-78, and 185.)

Petitioner testified at trial that he informed Sergeant Bates that he did not want to talk to him, and that he told both Bates and Sergeant Kinney that he wanted an attorney. According to him, Bates continued to talk to him about things he did not want to discuss. Petitioner's explanation for the signed confession, which was read into the record, was that a police officer took his handwritten exculpatory statement and told him that it would be copied onto a police form. The officer then left the room and returned with a statement, which he (Petitioner) signed without first reading it. He testified that he thought the statement was the one he had written out. He said that he had nothing to do with the shooting and that he did not write down anything relative to the shooting. (Tr. July 19, 2001, at 99-129.) His defense was that it was questionable whether he made the statement in evidence and that there was no physical evidence corroborating the facts set forth in the statement.

## 2. Application

Sergeants Bates and Kinney testified that they advised Petitioner of his constitutional rights and that Petitioner did not exercise those rights. Although the state court did not assess the officers' credibility, the jurors apparently found Sergeant Bates to be credible and Petitioner to be incredible. Petitioner signed two constitutional rights forms, waiving his right to counsel and his other constitutional rights. He also signed a fairly lengthy statement, which included a description of the crime and the events surrounding it. The signed documents are some indication that Petitioner did not desire to remain silent until he could acquire the services of an attorney. The Court therefore concludes that the record does not support Petitioner's allegation

that he requested, and was denied, counsel before making a statement to the police. The state appellate court's conclusion that Petitioner's confession was admissible was not contrary to, or an unreasonable application of, *Miranda* and *Edwards*.

### 3. Ineffective Assistance of Counsel

Petitioner's related ineffectiveness claim also lacks merit. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that defense counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The first prong of this test (deficient performance) fails because Petitioner has not shown that his trial attorney actually neglected to raise his Fifth Amendment claim in the trial court. Defense counsel's questions at the evidentiary hearing and at trial suggest that he was contesting the admission of Petitioner's purported confession on the ground that the police did not honor his request for counsel. Petitioner's appellate counsel conceded in her appellate brief that

> it is impossible to discern the basis of the suppression motion, since there is no written motion in the lower court record, and counsel never made any argument before the court decided not to make a ruling. But counsel did not protest against the court's determination that it did not need to rule since there was no challenge to the voluntariness of the statement.

*See People v. Richardson*, Mich. Sup. Ct. No. 124577, App. for Leave to Appeal at 14, n. 6; *People v. Richardson*, Mich. Ct. App. No. 237800, Brief on Appeal at 14, n.6. Thus, the record does not support a finding of deficient performance.

Even assuming that Petitioner's trial attorney did not raise Petitioner's Fifth Amendment claim in the trial court, Petitioner has not shown that his attorney's performance prejudiced the defense. The trial court stated on the record that Petitioner was advised of his rights, understood

9

his rights, and then voluntarily made a statement. It is unlikely that the trial court would have been persuaded by Petitioner's Fifth Amendment argument, given the two signed waivers of his constitutional rights and the police officers' testimony that Petitioner did not request an attorney.

Petitioner has not shown that his attorney's performance was deficient and that the allegedly deficient performance prejudiced the defense. Therefore, the state appellate court's conclusion that Petitioner had not established ineffective assistance of counsel did not result in a decision that was contrary to, or an unreasonable application of, *Strickland*.

### B. The Remaining Claims

Petitioner's remaining claims allege that he was deprived of due process by (1) the trial court's denial of his motion for a directed verdict, (2) the admission of prejudicial photographic evidence, (3) testimony that he was on probation, and (4) the admission of prior "bad acts" evidence. Petitioner also alleges that his trial attorney's failure to object to inadmissible evidence deprived him of effective assistance of counsel and that the cumulative effect of the prejudicial errors deprived him of a fair trial. Respondent argues that these claims are procedurally defaulted because Petitioner failed to raise the claims in the Michigan Supreme Court and he no longer has an available remedy.

#### 1. Exhaustion/Procedural Default

The exhaustion doctrine requires state prisoners to pursue available remedies in state court before seeking a federal writ of habeas corpus. *See* 28 U.S.C. § 2254(b)(1); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Prisoners must invoke "one complete round of the State's established appellate review process," including a petition for discretionary review in the state's supreme court "when that review is part of the ordinary appellate review procedure in the State."

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 847 (1999). Because 28 U.S.C. § 2254(b) "refers only to remedies still available at the time of the federal petition," *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982), the exhaustion requirement "is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law.'" *Gray v. Netherland*, 518 U.S. 152, 161 (1996) (alteration in original) (quoting *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

Petitioner presented his last six claims in the Michigan Court of Appeals, but not in the Michigan Supreme Court. He cannot submit his claims to the state supreme court now because the fifty-six-day deadline for doing so expired years ago. *See* Mich. Ct. R. 7.302(C)(2). The only post-appeal remedy for challenging a conviction in state court is to file a motion for relief from judgment. *See* Mich. Ct. R. 6.501 & Comment. The trial court must deny a motion for relief from judgment if the motion alleges grounds for relief which were decided against the defendant on appeal, unless a retroactive change in the law has undermined the prior decision. Mich. Ct. R. 6.508(D)(2). The Michigan Court of Appeals has already considered and rejected Petitioner's last six claims, and Petitioner is not relying on a retroactive change in the law. Therefore, he lacks an available state remedy to exhaust, and his claims must be deemed exhausted, but procedurally defaulted. Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994).

### 2. Cause

Petitioner alleges in a reply to Respondent's answer that he was confined in segregation while his case was pending in the state supreme court and that he relied on his appellate attorney to present his *pro se* issues in the Michigan Supreme Court. He maintains that his appellate attorney abandoned his claims and was ineffective for failing to raise the *pro se* claims in the

Michigan Supreme Court.

"Constitutionally '[i]neffective assistance of counsel . . . is cause for a procedural default.'" *Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)), *cert. denied sub nom Houk v. Joseph*, 127 S. Ct. 1827 (2007). "However, . . . the exhaustion doctrine, which is 'principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings,' *Rose v. Lundy*, 455 U.S. 509, 518 (1982), generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray*, 477 U.S. at 488-89.

Petitioner has not exhausted state remedies for his claim regarding appellate counsel. Although he could not have raised that claim on direct appeal while still represented by the attorney, he could have raised the claim in a motion for relief from judgment before filing his federal habeas corpus petition. Because the claim about appellate counsel is unexhausted, it cannot serve as "cause" for Petitioner's procedural default. The Court need not determine whether Petitioner has demonstrated the requisite prejudice because he has not shown "cause" to excuse his procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003).

### 3. Miscarriage of Justice

A federal habeas petitioner may obtain review of procedurally defaulted claims in the absence of a showing of "cause and prejudice" by demonstrating that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The exception for miscarriages of justice requires demonstrating that a

constitutional violation probably resulted in the conviction of a person who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Murray*, 477 U.S. at 496. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of . . . new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Petitioner has not supported his claims with any new evidence of actual innocence. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to adjudicate the merits of Petitioner's final six claims. Those claims are procedurally defaulted and barred from substantive review.

### IV. Conclusion

Petitioner's first claim lacks merit and his remaining claims are procedurally defaulted. Therefore, the habeas petition **[Docket No. 1, filed Mar. 22, 2005]** is DENIED.

s/ DENISE PAGE HOOD  
DENISE PAGE HOOD  
UNITED STATES DISTRICT JUDGE

Dated: June 6, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 6, 2007, by electronic and/or ordinary mail.

S/William F. Lewis  
Case Manager